May it please the Court, Counsel. The petitioner's position is that the finding of the Workers' Compensation Commission in favor of the petitioner for penalties and attorney's fees was not against the manifest weight of the evidence, and we're asking you to reinstate the Commission's decision and find that the Circuit Court's rejection of the penalties and attorney's fees. Do you receive a copy of the Applebee's emergency motion to bar your argument and strike portions of your brief? I received it, yes. Did you want to respond to that? I think it's absolutely baseless. Would you like to further respond to that? Excuse me? That's a conclusion. Do you want to respond to the keep going? Well, there's nothing in the record to support it. Well, hang on. They cited that your client testified under oath at the time of the trial that he was under doctor's care with a work restriction of 10 pounds. They are now alleging in their motion that when they got the certified records from Dr. Vann, they're saying it was released to return to work without restrictions and further released for medical care on the same day. So they're opining or suggesting there's some kind of a fraud going on here. How do you respond to those allegations? The petitioner testified truthfully that he was placed under a 10-pound restriction by Dr. Vann when he was seen by Dr. Vann on March 5th of 08, and he was not asked anything nor did he testify anything about any additional treatment that he had by Dr. Vann after that. So he was placed under a work restriction of 10 pounds? That's right. And that's supported by the record of Dr. Vann that I subpoenaed and placed into evidence. Well, what do you make of their citing these medical records that say that he was released to return to work without restriction on June 11, 2008? What do you make of that? Well, that is a record of a subsequent visit. That is not in evidence. And when I subpoenaed the records, it was not even in existence. So it's not in evidence in any event that doesn't contradict what had happened earlier in the year. Is that in essence what you're saying? Yes, that's correct. And you're saying that if we look through this record, Dr. Vann's records as of the date of the hearing would support the testimony of your client? Well, I'm saying that the records that I put into evidence which I subpoenaed a couple months before the hearing are absolutely consistent with my client's testimony. I didn't obtain any subsequent records. Tell us again what testimony is consistent. What did he say? Well, my client, he said that he was placed under a 10-pound restriction by Dr. Vann when he saw him on March 5, 2008. And he also said that Dr. Vann recommended that he have physical therapy and a subacromial injection and that he couldn't get it because the respondent refused to pay for seeing Dr. Vann's office visit as well as for the treatment. This arbitration took place on July 17, 2008. Did he conveniently forget that Dr. Vann had released him without restrictions one month earlier? He was never asked about it. It was never raised. Hold on a second. What question did you ask me? You got the transcript there? What did you ask me? He said you sought further medical treatment for your shoulder by going to Vann Orthopedics. Is that correct? That's correct. I called their offices and they have one in Rochelle which made it easier for me. I made an appointment with them. When I arrived there, they questioned me on how it was going to be paid for. I informed them it was part of a worker's comp claim. They arranged the appointment. I went in for the appointment. Dr. Vann took a look at the shoulder. He also reviewed the MRI that I carried with. Did Dr. Vann and the arbitrator interrupt it? Do you know what the date was on this? Yes. This was March 5, 2008 that you saw Dr. Vann, correct? Yes. Dr. Vann recommended a subacromial injection and injection into your shoulder. Yes. He recommended I get an injection and that I seek or receive further physical therapy which they could provide there. Were you able to receive either the physical therapy or the injection? I had made a follow-up appointment at that time. Were you able to get the physical therapy or the injection? No. Was it because worker's comp refused to authorize payment? Answer, I was informed that any further treatment was not authorized by worker's comp. Did Dr. Vann also give you a 10-pound lifting restriction? Also, yes, he did. So you get to testify what Dr. Vann did in March, but you don't have to tell anybody what he did a month before the hearing. But it was without restrictions. That sounds like sharp practices to me, Mr. Whitman. Well, I don't know about that. I mean, if your client received no restrictions in June, one month before this hearing, what's he doing telling the arbitrators he's under a 10-pound restriction for? Who cares what his restriction was in March? They care what his restriction was in June or July. I would respectfully disagree. If you'll notice in the record, he was examined on June 10, 2008, by the Respondent's own doctor, Dr. Lieber, who said he was under a 10, he should be under a 10-pound restriction, which is the same restriction that the Respondent's industrial doctor, Dr. Jackaman, placed him under as apparently a permanent restriction. Don't you think the Commission would want to know that his own doctor put him under no restrictions on the following day? Don't you think that's important for the Commission to know when it determines what the nature and extent of his injury is? Well, I don't think it would have made any difference because he had already been placed under 10-pound restrictions by these three doctors, plus he had already been terminated from his employment in April by the Respondent because he was unable to perform any work they said that he could do. Further, after that, after his term … Well, that was because of the restriction, wasn't it? Pardon me? He couldn't perform any other work because of the restriction? That's right. Well, but then we have June 11th, we have his treater, right, say he can return back to work full duty and the restriction's gone. Well, that's what he said. I didn't have that record at the time, but he had also … And that record's not a part of the record in this case now, is it? No, it's not. Now, let me ask you a question. Was there a hearing in this case before Arbitrator Ruth White, February 4, 2011? No. Well, evidently the employer subpoenaed these records from the doctor to appear before Arbitrator Ruth White, February 4, 2011. That's how they got these records. Is that your understanding? I don't know. If that's what they put on their subpoena, it doesn't make any sense to me. You didn't know anything about any hearing in this case? No. I didn't have any notice of any records being subpoenaed. Arbitrator Ruth White is not involved in this case in any way. So, and it purports to be signed by the chairman of the Illinois Workers' Compensation Commission. I guess you get those pre-signed. Is that what happens? And then the attorney fills them out? That's right. Okay. So there wasn't any hearing before Ruth White, as far as you knew, on February 4? No. And if there was, it wouldn't have been appropriate. This is, you know, I mean, Arbitrator Ruth White has nothing to do with this case. And February 4, 2011, nothing that I knew anything about. As I was starting to say earlier, the Circuit Court of Ogle County relied in its reversal of the award of penalties and attorney's fees on the report of Dr. Lieber. Dr. Lieber did not examine the petitioner until three and a half months after the respondent cut off the petitioner's benefits, which were cut off on February 27, 2008. Dr. Lieber examined him on June 10, 2008. I understand the position with respect to Lieber. What about the commission's rejecting reliance upon the opinion of Dr. Jockaman? What happened with him? What did Jockaman have to say that bears on the issue in this case? The only, on this issue, the only thing that's in evidence from Dr. Jockaman, who was the company doctor at the Kishwaukee Corporate Medical Clinic, is that the petitioner was able to go back to work on February 27, 2008, with a 10-pound lifting restriction. When the petitioner took that to his job, they told him, we don't have anything for you within that restriction. A month and a half later, he got a letter from his employer telling him he was terminated, because he couldn't, it affected his ability to perform the essential duties of a stress, stress, trust laborer, I'm sorry. The respondent tried, they objected to the admission of the records from Kishwaukee Corporate Health, so those records were never admitted into evidence. The respondent also tried to put, and they did put in their brief before the commission, statements that were not in evidence, and in fact they did the same in their brief before this court, stating two things that were not correct. One of the things they stated was that there was a release, a return to work with no restrictions, and another thing that they stated was that there was a release to return to work without restrictions as it related to an injury sustained by working for the employer. The fact is that the employer, the employee, I'm sorry, in 1984 had had a surgery for an anterior, excuse me, a posterior and inferior dislocation of his right shoulder when he was in the Marine Corps. After six months, he was able to return to work, or to return to duty, full duty in the Marine Corps. He remained in the Marine Corps for a while, was discharged, had no restrictions, then he joined the Army, was in the Army until 1995. When he was discharged from the Armed Forces at that point, they found no impairment whatsoever. He had no problems, no restrictions. For the next ten years, he performed heavy work, laboring in warehouses, doing work at an auto parts store where he had to lift all kinds of heavy objects, and then he had worked for over two years with, for the... Oh, right, you're going through a long history, but the issue right now is with respect to the propriety of awarding the fees and then a reversal by the Circuit Court, right? We're talking about penalties and fees, are we not? That's right. Well, I'm just reciting this because it may be unnecessary, but that's part of what the Circuit Court relied on. They were claiming that Dr. Jackaman's release or her form that she filled out was ambiguous, but it wasn't ambiguous to anybody because the circuit, I mean, the employer refused to put the petitioner back to work because there was a ten-pound restriction on there. Now, there was a box in there that says release to work full duty, but right under it said release with the ten-pound lifting restriction. Doesn't it sound like it's a little ambiguous, though? If you've got two different statements in there? One says release with restriction, one says no restrictions. Doesn't it sound like it's a little bit of a conflict? I'm not saying it actually hurts your case, your position, but it looks like it's a little ambiguous. I don't think it was ambiguous. Everybody, the employer certainly didn't think it was because they said you've got a ten-pound restriction and you're not allowed to come back to work. And then they fired him because of that. And so I don't think there was any ambiguity. And I think the employer, you know, they got this ex post facto opinion from Dr. Lieber to try to justify their conduct, which is, you know, normally what they do is they get the opinion first and then they cut the man off. They didn't do that in this case. What date did they cut him off? February 27th, 2008. This report that they want us to consider, that he was able to go back to work without restrictions, was issued what date? June the 11th, 2008. Okay, yes, I think that's right, June 11th. So I suppose the question is, of what relevance is a report that's issued on June the 11th, 2008, to the question of whether they vexatiously refused to pay benefits on February 27th? Well, not only does it not have any relevance, but you have a man in the position of not having a job based on the employer's position that it has no work within his restrictions. And not only that, the man has been performing a job search and doing his very best, which you testified in quite some detail about, ever since he had been terminated, or actually even since his benefits had been terminated, even though he didn't even have a working vehicle and he had to hitchhike and he was kind of... I'm not worried about that. I'm worried about the question of whether, is there any question of whether this man was under a 10-pound lifting restriction on February the 27th, 2008? Well, I don't think there is. And as I say, everybody, the subsequent doctor who saw him, Dr. Vann, on March 5th, as well as Dr. Lieber on June 10th, 2008, all agreed that there was a 10-pound restriction. Okay. Thank you. Counsel, please. Good morning, Justices. Afternoon, Counsel. Elizabeth Capoletti on behalf of the appellee. Keep your voice up, please. Keep your voice up because it sounds like there's some important arguments to be made. Certainly. I appreciate the fact with my motion that I was not trying to add the records into the records, the records for Vann Orthopedics. And in response to your question as to the subpoena, they are, in fact, pre-printed forms from the commission. And it's my understanding that this matter still appears before an arbitrator in DeKalb who would be Arbitrator White, which is the... This matter is pending before this court now. I understand. And you took a subpoena and put the old workers' comp claim number on it, right? Yes, sir. And served it on the doctrine. Now, did you send any notice of opposing counsel about that? I sent the subpoena out, and I don't know if the subpoena has the CD on it. What did the commission rule say about whenever you subpoena medical records from a treating physician, whether you have to give any kind of notice or anything to the other side? I do not believe so. All right. So the case is pending before this court. It's set for oral argument this month, and your subpoena asks for all records. Yes, sir. So you were asking for records even after this case had been before the commission. Again, this is not part of the record, but the reason I was doing that is that counsel had requested some ongoing benefits, and I needed to know what the petitioner's condition was at this juncture. Now, let me hear that again. Counsel had requested some ongoing benefits. Correct. So that was all outside of this appeal then. That is correct. All right. And then I received the records in, and I felt in reading those records that given the testimony at trial by the petitioner, as well as the signed stipulation by the petitioner's attorney claiming entitlement to ongoing TTD benefits through the date of the hearing, that there was no longer a good faith basis for that argument. Now, the only issue before the court's penalty is an attorney's fees. You agree with that, don't you? Absolutely, sir. Okay. Well, tell us then how these records that you've produced just a few days before oral argument affect that sole issue that's before the court. That sole issue before the court is I feel that given those records as a matter of law, there's no longer a good faith basis to argue for penalties after June 11th of 2008. Were there any penalties awarded for any time period after June 11th? Correct. There were. They were awarded up and through the date of hearing, which was July 17th, I believe, of 2008, both TTD and penalties. So your emergency motion only addresses about four to five weeks. That's correct. I mean, that was ñ I was not ñ I appreciate this Court's prior case law relative to fraud and where those type of issues need to be addressed. I was addressing that I felt that given those records that there was no longer a good faith basis on which to make the argument after June 11th relative to the award of penalties. But is that what your motion said? Wasn't your motion to bar his argument completely? After June 11th of 2008. I apologize if the top of the motion heading was not as clear. But in my prayer for relief, I just asked for it to be barred as of June 11th, 2008, and for any portions of the brief to be stricken as it related to after June 11th of 2008. I think the caption may not be as clear as it could be. I don't have any further questions on that. But this issue with Dr. Lieber's report does raise some legal as well as logical questions. If you're relying on that as a basis to deny benefits, as my learned colleague Justice Hoffman pointed out, the letter was received in June 2008, and yet the employer terminated benefits in February. So how can a letter issued three months later be the basis for justifying the termination of benefits months earlier? I don't believe that that was the basis of terminating the benefits. To begin with, I do believe that the release to return to work from February 27th of Dr. G. and Coleman is unclear. One says full duty. Part of it says full duty. Part of it says 10 pounds. I saw that. But let's assume for the argument that's correct. Okay. Did your client ever ask Dr. Jackman to resolve the inconsistency? Wouldn't that have been a simple way of finding out what really the truth of the restriction was? I believe that Dr. G. and Coleman tried to resolve that by herself saying and requesting that an IMB be scheduled. That was also part of that record itself. And then just to address your concerns about using a letter that goes back three months. I agree with you. That doesn't make any sense. And that's not my argument before this Court. So now you're saying you agree Lieber's letter then has nothing to do with this case that you have to concede. No, no, no, no. Lieber's letter is very important, but it's in conjunction with the treatment received by the appellant with Dr. Vann. The petitioner went, the appellant went and saw Dr. Vann on March 5th of 2008. And in that record itself, he indicates to Dr. Vann that he believes he can work full duty. I mean, he told Dr. Vann that himself. So certainly as of March 5th of 2008, as it's memorialized in the records, the appellant felt he had been released full duty, which is what the record said. He then provided, he does provide a history to Dr. Vann regarding his injury at work with his shoulder. He then goes on to say to Dr. Vann. I guess my question that you didn't answer, are you relying on Lieber's letter issued several months after termination or no? I'm relying on Lieber's letter as to the fact that the ongoing restriction and need for treatment was due to a degenerative condition. I am saying that as a part of the... Okay, look, kind of simple for me. Okay. You terminated benefits when? February 27th of 2008. On the basis of what? February 27th of 2008, there was an ambiguous release from Dr. G. Cohen, which said full duty, also 10-pound restriction, and she recommended an IME. Okay. Okay. And so that, in that, you think is a good basis for, and all the other criteria for terminating benefits. Certainly in that time, and certainly according to the appellant when he went and saw the doctor on March 5th of 2008, he told the doctor at that time he believed he had been released of full duty work. So you're just using this after the fact to try to interpret the ambiguity in a statement by a doctor that you relied on to terminate benefits, correct? No, absolutely not. I apologize if that's what I'm trying to say. I am saying that certainly the appellate court, the Fifth District appellate court stated, and Lillian Nunn specifically, although medical testimony as to causation is not necessarily required, where the question is one within the knowledge of experts only and not within the common knowledge of lay persons, expert testimony is necessary to show that the claimant works activity caused the condition complained of. Cases involving aggravation of a preexisting condition primarily concern medical questions and not legal questions. We're not in the issue of causation, though. We're talking about penalties. I understand that. I appreciate that. And I know that we did not cross appeal, but I think you have to look back on what the respondent was doing and what was objectively reasonable at the time. Did we have a good basis on which to dispute liability back in March of 2008? And I am saying given the ambiguous records from Dr. Giancomo coupled with Dr. Vann's records, which clearly state he gives a history of a work injury, but then goes on to state at length regarding his prior problems and then Dr. Vann's records are in March. Correct, in March. And Dr. Vann goes on to even indicate and he puts in his records MRI done of his right shoulder, has post-operative changes to the shoulder as well as questionable degenerative change and degenerative tearing of the anterior labrum. Right before that, the Petitioner provides his history regarding his prior treatment for his shoulder in 1983, and immediately following that history, memorization of history. Can you see the problem here of what's going on? It's almost like the theme of the case is back to the future. You're referring to something that happened in March from Vann's records. You're referring to a letter in June to justify terminating benefits in February. No. You don't see a problem here? And that's what I'm saying. I'm not using that letter to justify terminating benefits in February. I'm saying it is the appellant's burden to show that there is a work-related injury, that his degenerative condition was somehow aggravated or accelerated, and the respondent was certainly reasonable in contesting liability given the fact there was no clear opinion from Dr. Vann. Dr. Vann does make recommendations as to treatment and to diagnoses, but nowhere in his records does he say this is because of his work-related injury. He doesn't say this work-related injury aggravated or accelerated the degenerative condition. All he says is he memorializes a potential work injury where the Petitioner then says he's been discharged from physical therapy, has been released full duty. Appellant then talks about a degenerative condition that he had, and Dr. Vann then memorializes ongoing degenerative problems with the right shoulder. I'm saying how would the respondent ‑‑ it's certainly reasonable for the respondent then to contest liability because there is no clear opinion from the doctor indicating that his ongoing treatment was due to the work injury. It could have just as well been due to his degenerative preexisting condition. I think I understand what you're arguing. Whether or not we agree with it will be determined. Certainly. I just didn't want you to think that ‑‑ I completely agree you can't use a letter that's three months post-haste to prove, to somehow retroactively justify that, and that's not what I'm saying. I'm saying looking at all the circumstances at the time, the respondent contested, had a good faith basis on which to contest liability. Okay. But aren't you doing something similar with Dr. Vann? Pardon me? I mean, aren't you doing ‑‑ I mean, we got Lieber back there and forward in June. Sure. But we got Dr. Vann forward in March, right? I guess I don't ‑‑ Well, all of this Dr. Vann discussion occurred after you stopped TTD. Correct. He went to Dr. Vann on March 5th. Right. And the 27th is when you ‑‑ Correct. The 27th is, right. And also during the meantime of all this, and I didn't mention, we did, the respondent also did advance some monies in the meantime, even given the, I truly believe the ambiguous record from Dr. Vann. There was monies tendered to the appellant for a disputed period of temporary total disability. Well, let's just look at the law here for a moment. On February 27th, I mean, where did the commission go wrong in saying, okay, February 27th, the employer erred here in terminating benefits and we're going to penalize? Well, I believe that the Petitioner's Exhibit 7, which is the ambiguous record for Dr. Gene Como, certainly shows one saying, part of it saying full duty and part of it saying 10 pound. And then I certainly think that given what the appellant tells Dr. Vann himself. Let's just don't go to Vann yet. Okay. Let's just talk about on February 27th. Sure. I mean, why is the commission wrong at that point? Given the ambiguous record. So it just boils down to this ambiguity with Dr. Gene Como. I think that's part of it. Yes, for that moment. But then certainly coupled with what the appellant himself told Dr. Vann that he thought he was at full duty. I mean, he. If the employer was acting in good faith, why wouldn't the employer try to get clarification of this ambiguous restriction? Instead of just saying, okay, no work for you. We're not going to pay medical treatment for Dr. Vann. We're not going to pay any TTD. And you're fired. Three minutes later. That's what happened, right? For me to answer that question, I believe I'm going to have to go outside the records. Because I do believe that's contained in the rejected medical records. That was part of the record. So that's why I haven't addressed it. And I've been trying to stay within the record relative to the petitions exhibit. All right. Please do that. That's why I did not address it. I stayed within the accepted medical records. So the employer sees an ambiguity, as you candidly acknowledged in the report. There's an ambiguity, as you clearly referred to it. What prevented the employer from resolving, trying to resolve with Dr. Jockaman the inconsistency? Did they send a letter to Jockaman asking him to clarify the apparent ambiguity? Again, I don't know that for certain, and it's certainly not in the record. If it's there, and I think a thorough answer for that would refer to the rejected exhibit. Well, then you can't point us to anything in the record then, can you? I mean, I don't mean to hold you necessarily, but you recognize we have to be held to the record. Can you show us anything in the record that says the employer tried to resolve this apparent inconsistency before they summarily cut off the TTD? I can't tell you that there's anything in the record that says that. Well, then we have to rule in the record, don't we? I believe you do have to rule in the record, but I believe that the record supports that the employer had a good faith basis on which to dispute payment of the benefits. The ambiguity as well as the lack of the opinion from Dr. Vann as to whether or not the apparent preexisting degenerative condition was aggravated or accelerated by his work injury. And I think it's really the lack of it, because it's not the employer's burden to prove its case. And I think the Supreme Court stated it pretty clearly in Avon Products where they say penalties for delayed payment are not intended to inhibit contest of liability or appeals by employers who honestly believe an employee not entitled to compensation. I mean, there's an honest belief. Let me mix the two up. Whose burden is it when TTD is cut off, who bears the burden of showing it was reasonable determining those benefits? Who has the burden, the claimant or the employer? I think that the burden is always with the employee to prove the underlying liability. And I absolutely believe that we have a we must show that there's a good faith basis and that the way we acted was not vexatious and was objectively reasonable at the time. Absolutely. So if we were to simplify this, is that when you get a report that's like a 50-50 report, if you pick the side of termination and then you get some evidence thereafter to support your bet, then you shouldn't be penalized, right? I'm not sure I can agree with that, but what I would say is that it's still the burden of the appellant to prove that they're entitled to it and that the appellee or the respondents have an ability to contest liability. I mean, it has to be reasonable, and I don't disagree with that. But I don't believe that there's anything in the Act that makes us proactively have to pay TTD benefits and thereafter justify why we haven't. I mean, I don't believe that that was what the purpose of the penalties provision was, and I certainly don't think that that's what has been held by the Supreme Court. But I think that the respondent should have the ability to contest it because until it's final, it's a contested case. What's the earliest date that you got a no causation opinion on Dr. Lieber? It's Dr. Lieber's report from June 11. June 11. That's correct. How can a judge come to the conclusion that you had a right to rely on Dr. Lieber's opinion when you terminated benefits? How can you rely on a June 11 report when you terminate benefits in February? I apologize. I don't have his report. When the arbitrator was free to give no weight to Dr. Lieber's opinion, the plaintiff was not guilty of bad faith for doing so. Well, I think, again, he's using the same argument that I am, is that we were contesting liability from the beginning and that it was certainly up to the commission to say, hey, we don't agree with Dr. Lieber's position as to causation, that the degenerative condition was not aggravated or accelerated. The commission was free to ignore that, but the respondent wasn't inappropriate in asking to have that opinion and have that causation expressed. But you're only free to terminate benefits at such time as you can make a good faith argument he's not entitled to. You couldn't make a good faith argument that he wasn't entitled to until June 11. And I guess that's where what I'm trying to say is that, given the fact that there was an opinion from Dr. Vann, that there was a good faith argument to contest liability. Can I take your time? Okay. Thank you, Your Honor. Thank you, Mr. Vottle. Thank you. Just briefly, I think that it is the employer's burden, as I stated in my brief, citing Roothouse Envelope Company, the employer bears the burden of showing that it had a reasonable belief that the delay in payment of benefits was justified. And in Cook County v. Industrial Commission, to avoid the imposition of penalties and fees, an employer must show that the facts in its position would have led a reasonable person to believe that a claimant is not entitled to prevail under the Act. An honest, though flawed, belief is not enough to escape liability. Also, in response to Your Honor's questions, Ruth White has never been the arbitrator in DeKalb. At the time of this trial, the arbitrator was Arbitrator Robert Falcioni, and now it's, for about two years, it's been Arbitrator George Andros. Well, was there a question about ongoing benefits? Excuse me? Was there something about ongoing benefits for your client, though, that would justify getting medical records? I mean, I understood counsel to say there was something not involved in this appeal going on. The opposing counsel was very specific and said upon some type of a request from whoever is representing your client, maybe you are still, that this, about some ongoing benefits, that this subpoena was sought. I don't, I think that the only discussion that I can remember was that counsel claimed, I can't remember what she said. Well, I mean, you know, the question, at least in my mind, is, did they just decide to serve a subpoena to get medical records, you know, a few weeks before the case is set for oral argument, or was there some other legitimate reason, and then they just discovered this in the medical records? I mean, I understood counsel here to say she didn't have any, the subpoena didn't have anything to do with what was going on in this court, but then when she saw the records, she made a separate determination to file this motion. And I, you know, she said there was something about ongoing benefits. You know, I probably made some kind of comment about that my client wouldn't be entitled to, you know, as a security guard, and he's not making much money, and that he hadn't been able to get any additional treatment because he, they had denied treatment before, something along those lines. Also, I just wanted to, I don't know if it's important, the date they put on this subpoena, February 4th is not the date, the hearing date in DeKalb. The hearing date is normally the third Thursday of the month, which would have been, which was this past Thursday, February 17th. And I do believe, and I don't know this is necessarily something that everybody agrees with, but I do believe that whenever a subpoena is used by the respondent, they're supposed to send a copy to the petitioner, because if they don't, and it's one of these subpoenas where they want any and all records, then it would be able, the petitioner would be able to notify the medical provider that, you know, the petitioner has an objection to that, and there are a number of firms that do utilize that practice. Thank you. Court will take the matter under advisement for disposition.